UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
EDWARD VICTOR TORINA

                          Plaintiff,          06-CV-414

           v.                         **DECISION**
                                             **and ORDER**
MICHAEL J. ASTRUE[1], Commissioner
of Social Security

                          Defendant.
_____

## INTRODUCTION

Plaintiff Edward V. Torina ("Plaintiff") brings this action pursuant to the Social Security Act § 216(i) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") payments. Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") William R. Pietz denying his application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c)("Rule 12 (c)"), on grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25 (d) (1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

pleadings, on grounds that the Commissioner's decision was erroneous. The court finds that the decision of the Commissioner for the reasons set forth below, is supported by substantial evidence in the record, and in accordance with applicable law. Therefore, the Commissioner's motion for judgment on the pleadings is hereby granted.

## BACKGROUND

On April 19, 2004, Plaintiff, at that time 38 years-old, filed applications for Supplemental Security Income Benefits under Title II, § 216(i) and § 223 of the Social Security Act claiming an inability to work since October 6, 2001, due to: diabetes, emphysema, arthritis, asthma, high blood pressure, cholesterol, acid reflux disease, severe leg pain and a hernia. Plaintiff's application was denied by the Social Security Administration ("the administration") initially on June 2, 2004. Plaintiff then filed a timely request for a hearing on August 2, 2004.

Thereafter, Plaintiff with counsel, appeared before the ALJ on January 11, 2006. In a decision dated January 19, 2006, the ALJ determined that Plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on April 28, 2006. On June 22, 2006, Plaintiff filed this action.

**DISCUSSION**

## I.  **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938).  Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo).  The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).  The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the

material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II.   The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

The ALJ in his decision found that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ adhered to the Social Security Administration's 5-Step sequential evaluation analysis for evaluating appointments for disability benefits. 20 C.F.R. § 404.1520. The 5-Step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, such inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so, claimant will be considered disabled without considering vocational factors; (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work,

ALJ determines whether claimant could perform other work. Id.

Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Transcript of Administrative Proceedings at page 14) (hereinafter "T."). At Steps 2 and 3, the ALJ concluded that Plaintiff's impairments of lumbar spine dysfunction, diabetes mellitus with early peripheral neuropathy in the lower extremities, asthma, and hypertension, are impairments that are "severe" within the meaning of the Regulations but were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T. at 14).

Further, at Steps 4 and 5, the ALJ concluded that Plaintiff retained the residual functional capacity to perform the exertional requirements of sedentary work, which includes the ability to lift and carry up to 10 pounds occasionally, sit for at least six hours a day, and stand or walk for up to two hours a day. (T. at 17). Plaintiff's residual functional capacity to perform the full range of light level work was diminished, because he needs to alternate between sitting and standing every 30 minutes and needs to avoid hazards such as unprotected heights and moving machinery. (T. at 17). The Plaintiff is also limited by having to avoid concentrated exposure to dust, fumes, gases, and temperature extremes as a precaution against triggering his asthma. (T. at 17).

Moreover, the ALJ found that Plaintiff had no past relevant

work experience. (T. at 17). Therefore, the burden shifted to the administration to show that there are jobs existing in significant numbers in the national economy that the claimant could perform, consistent with his residual functional capacity, age, education and work experience. (T. at 17). The ALJ properly concluded that Plaintiff had the residual functional capacity to perform a significant range of sedentary work that existed in the national economy, such as working as a laundry folder and a lock assembler. (T. at 17, 18).

   A.   **The ALJ properly evaluated the medical opinions in the record.**

The ALJ properly relied upon substantial objective medical evidence as well as Plaintiff's subjective complaints, in weighing the opinions of Plaintiff's physicians.  The AJL primarily relied upon the opinions of Dr. Meng, the Administration's physician, and Dr. Matteliano, one of Plaintiff's treating physicians, and afforded little weight to the opinion of Plaintiff's other treating physician, Dr. Paik.

The Social Security regulations require that a treating physician's opinion will be controlling if it is, "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).  The ALJ gave little weight to Dr. Paik's opinion because it was brief, was unsupported by objective evidence, and was inconsistent with both

substantial evidence and Dr. Meng's opinion contained in the record. (T. at 16).   Plaintiff's other treating physician, Dr. Matteliano, also expressed his opinion in regards to Plaintiff's condition, which was also taken into consideration by the ALJ. (T. at 16-17).

On July 26, 2004, Dr. Paik completed a Department of Social Security Services Disability form, and stated that the Plaintiff was diagnosed with diabetes mellitus, asthma and degenerative joint disease. (T. at 122-123).  Dr. Paik noted that the Plaintiff was capable of performing light work which was defined as lifting twenty pounds occasionally and ten pounds frequently, and capable of a stand/walk option for six hours in an eight hour work day. (T. at 122).  There were no mental signs or symptoms present. (T. at 123).

A second medical form for employability was also completed by Dr. Paik on July 11, 2005. (T. at 128-129).  While Dr. Paik stated that Plaintiff was moderately limited in walking, standing, sitting, lifting/carrying, pushing/pulling/bending and climbing stairs, the Plaintiff was not limited in seeing, hearing, speaking or using his hands. (T. at 129).  Dr. Paik also observed that there was no evidence of any limitation in Plaintiff's mental functioning. (T. at 128-129).

Dr. Paik also wrote 3 notes in regards to the Plaintiff's health. (T. at 134-136).  The first note, dated June 21, 2004,

stated that the Plaintiff could not work because of his disc disease. (T. at 136). The second note, dated November 4, 2004, stated that the Plaintiff was unable to work, and that surgery was scheduled at that time. (T. at 135). The surgery was performed, but was for a bilateral inguinal hernia repair. (T. at 137). In his final note dated December 7, 2005, Dr. Paik stated that Plaintiff was unable to work due to a medical condition, but offered no explanation for his statement. (T. at 134). The ALJ accordingly did not give significant weight to Dr. Paik's opinion because of the brevity of his notes, and his conclusions were not supported by any objective evidence. (T. at 16). Dr. Paik also contradicted himself, since in June 2004 he wrote a note saying that Plaintiff could not work because of his disc disease (T. at 136), yet during his examination of Plaintiff in July 2004, Dr. Paik indicated that Plaintiff could work 6 hours per day, with a sit stand option. (T. at 122-123).

Dr. Meng, an Internist, examined Plaintiff at the request of the Administration on May 25, 2004. (T. at 102-106). Plaintiff's chief complaints were asthma, low cholesterol, diabetes, chronic obstructive pulmonary disease ("COPD"), hypertension, acid reflux, and back and leg pain. (T. at 102). Plaintiff told Dr. Meng that he has had asthma since he was a child, however, he admitted to smoking one to two packs of cigarettes a day, and has been doing so since 1979. (T. at 102-103). Plaintiff's cholesterol is controlled

with medication. (T. at 102). On the date of the examination, his blood pressure was 128/80. (T. at 102). Plaintiff has had diabetes since 2000, but was able to control his blood sugar by losing thirty pounds. (T. at 102). In 2002, Plaintiff was diagnosed with acid reflux, causing heartburn and occasional abdominal pain. (T. at 102). The Plaintiff informed the doctor that at times both legs will go numb and give out due to an accident that occurred in 1994, where he fell down twenty stairs and was put on bed rest for a month. (T. at 103). He reported that he can cook, clean, do laundry, shop, shower and dress himself, and watch TV and listen to the radio without any assistance. (T. at 103). Upon completion of the examination, Dr. Meng concluded that Plaintiff had no limitations in his upper extremities in terms of dexterity and minimal limitations to perform heavy lifting. (T. at 105). Plaintiff's cervical spine had no restrictions with range of motion. (T. at 105) While Plaintiff's lumbar spine had mild limitations with bending, extension, twisting, and heavy lifting, his lower extremities had minimal limitations with walking, standing, and going up and down stairs. (T. at 106). Dr. Meng also advised the Plaintiff to quit smoking and avoid any respiratory irritants because of his asthma. (T. at 106).

   Rehabilitation specialist, Dr. Matteliano, first examined the Plaintiff on July 28, 2005. (T. at 137-138). During his examination of the Plaintiff, Dr. Matteliano noted that the

Plaintiff did have lumbar spondylosis along with bulging discs at L4-L5 and L5-S1. (T. at 138). In an MRI of Plaintiff's lumbar spine taken on August 8, 2005, Dr. Matteliano noted degenerative changes at L4-L5 with disc bulging without herniation. (T. at 139). Electrodiagnostic testing was completed on November 4, 2005, revealing only early peripheral neuropathy at lower extremities. (T. at 140). The ALJ took these findings into consideration in determining Plaintiff's residual functional capacity. (T. at 17).

### B. **The ALJ properly evaluated Plaintiff's subjective complaints.**

Plaintiff contends that, "The Administrative Law Judge did not apply proper legal standards concerning the weights to [sic] given to claimant's treating physicians's reports." (Pl. Br. at 12). However, the ALJ did properly consider the treating physicians's reports and stated that he was, "giving claimant the maximum benefit of the doubt," and reduced the Plaintiff's residual functional capacity from a medium work level, (as suggested by the state agency,) to a sedentary work level. (T. at 16-17).

For Plaintiff to be entitled to disability benefits, he must have a medically determinable impairment that is expected to result in death or last for a continuous period of time greater than twelve months, limiting his functional ability to do his past relevant work or other work that exists in the national economy. See 42 U.S.C. §§ 423(d) and 1382c(a)(3).

With respect to Plaintiff's asthma, pulmonary function tests performed in August 2003, found that there was only mild obstructive airway disease. (T. at 101). Pulmonary tests were again performed in May 2004, and results were normal. (T. at 108-112). Even though Plaintiff smokes one to two packs of cigarettes a day, potentially causing his lung condition, the ALJ nonethless took his asthma into consideration in determining proper level of employment which the Plaintiff was capable of performing. (T. at 102-103, 159, 17).

Plaintiff also testified that his diabetes and hypertension are controlled by oral medication. (T. at 168, 170). Testing also indicated that Plaintiff had mild early neuropathy in his lower extremities. (T. at 1032-133). However, the ALJ took this into account in determining his residual functional capacity, and recommended sedentary work with an option to stand allowing Plaintiff to rotate between sitting and standing every thirty minutes. (T. at 17).

While Plaintiff does complain about lower back pain, Dr. Meng's examination of Plaintiff revealed no major medical problems. (T. at 104). In fact, Plaintiff told the doctor that he had no problems completing every day chores around the house. (T. at 103).

This court concludes that Plaintiff's argument that the ALJ did not apply proper legal standards concerning the weight given to

Dr. Paik's reports is unsupported by the record. Simply stating that Plaintiff was disabled or unable to work is a determination reserved for the Commissioner. 20 C.F.R. § 416.927(e). No opinion reserved for the Commissioner is given any special significance, unless it is regarding the nature and severity of an individual's impairments. Id. Dr. Paik's reports were contradictory and failed to provide medical evidence to support his opinions. (T. at 128-131, 134-136).

I find that the ALJ correctly considered all of Plaintiff's physical as well as mental limitations in assessing Plaintiff's residual functional capacity. The ALJ's conclusion that Plaintiff was not disabled within the meaning of the act is supported by substantial evidence in the record.

## CONCLUSION

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                            s/Michael A. Telesca
                                              MICHAEL A. TELESCA
                                  United States District Judge

Dated:   Rochester, New York
           June 16, 2008